DRAKE, J.
[2In this suit for damages, the plaintiff/appellant, Gregory Noyel, appeals a judgment in favor of the defendants/appel-lees, The City of St. Gabriel (City) and the St. Gabriel Police Department, granting the defendants’ motion for summary judgment and dismissing Noyel’s claims against the defendants, with prejudice. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

Former governor of the State of Louisiana, Bobby Jindal, issued a declaration of a state of emergency pursuant to the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La. R.S. 29:721 et seq., on August 26, 2012, due to the impending landfall of Tropical Storm Isaac on Louisiana.[1] After strengthening to a hurricane, Hurricane Isaac made landfall on Louisiana at Southwest Pass of the Mississippi River on August 28, 2012, and made a second landfall just west of Port Fourchon, Louisiana on August 29, 2012.
Also on August 28, 2012, the director of public works for the City called the St. Gabriel Police Department to report a *1141 theft of a 55-gallon drum of diesel fuel, which had been stolen from the City’s wastewater treatment facility. Sergeant Sterling Redditt of the St. Gabriel Police Department responded to the call.
At approximately 11:54 p.m., Sgt. Red-ditt stopped the plaintiff, Noyel, on Bayou Paul Lane after observing a large drum in the rear of his vehicle that matched the description of the stolen diesel fuel drum from the wastewater treatment facility. After confirming that the drum in the rear of Noyel’s vehicle was the stolen property of the City, Sgt. Redditt arrested Noyel for looting pursuant to La. R.S. 14:62.5. Sergeant Redditt transported Noyel to police headquarters for the completion of paperwork related to Noyel’s arrest.
laFoIlowing completion of Noyel’s arrest paperwork, St. Gabriel Police Department officers, Dwayne Lee and Robert Jones, transported Noyel to the Iberville Parish Jail. Officer Lee handcuffed Noyel behind his back using double locked cuffs, placed Noyel in the rear passenger seat of the police vehicle, and fastened the seatbelt across Noyel’s shoulder. At some point during the transport, however, Noyel managed to lower the rear passenger window of the police vehicle. Officer Lee began braking while Officer Jones slightly opened the front passenger door in an attempt to prevent Noyel from exiting the vehicle once it came to a complete stop. Despite these efforts, Noyel escaped through the rear passenger window of the vehicle while it was still moving and fell to the ground, striking his head, Noyel sustained a closed head injury, bruises, contusion, and lacerations. Emergency Medical Services (EMS) transported Noyel to Earl K. Long Hospital, where he was subsequently transferred to Our Lady of the Lake Regional Medical Center. After his release from the hospital on August 31, 2012, Noyel was booked at the Iberville Parish Jail. Noyel pled guilty to simple escape, a violation of La. R.S. 14:110.[2]
Noyel filed a petition for damages on August 28, 2013, naming the City and the St. Gabriel Police Department as defendants. Noyel alleged that the negligence of the defendants was the cause-in-fact of his injuries, specifically, the defendants’ failure to: properly handcuff him; properly place a seatbelt and/or harness; lock the window to prevent it being opened by an arrestee; adequately secure, supervise, and safeguard an incapacitated suspect; adequately train officers in proper methods to secure and safeguard an incapacitated and agitated suspect; and properly, observe a suspect in order to prevent or deter the actions leading up to his injuries, as well 14as other acts of negligence, 'fault, or lack of due care.[3] Based on the injuries he sustained as a result of the defendants’ alleged negligence, Noyel -sought damages for- his medical expenses, past, present, and future pain and suffering, mental anguish, permanent disability, and other physical and mental damages. Noyel also filed a first supplemental and amending petition for damages.
The defendants answered Noyel’s petition and first supplemental and amending petition, asserting general denials. Thereafter, the defendants filed a motion for summary judgment, arguing that at the time of the incident, the officers involved were engaged in “homeland security and emergency preparedness activities;” therefore, they are immune from suit pursuant *1142 to La. R.S. 29:735. Noyel opposed the motion and filed a motion to strike the defendants’ affirmative defense of immunity on the basis that the defendants failed to urge immunity as a defense in their answer. The defendants replied to Noy-el’s opposition and also filed a motion for leave of court to file a first amended and supplemental answer, including the statutory immunity defense.
Following, a hearing on June 2, 2015, the trial court granted the defendants’ motion for leave of court to file a first amended and supplemental answer. The trial court granted summary judgment in favor of the defendants, dismissing Noyel’s claims against them, with prejudice, in a final judgment signed on June 17, 2015.
Noyel now appeals, requesting that this court reverse the judgment of the trial court granting summary judgment in favor of the defendants, and remand the matter to the trial court for further proceedings.
| JURISDICTION
A final judgment of the trial court can be appealed. La. C.C.P. art. 2083. A judgment that determines the merits in whole or in part is a final judgment. La. C.C.P. art. 1841. It is appropriate for us to examine the basis for our jurisdiction before addressing the merits of this appeal as appellate courts have the duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue. Motorola, Inc. v. Associated Indent. Corp., 2002-0716 (La.App. 1 Cir. 4/30/03), 867 So.2d 715, 717.
The record reflects that after the June 17, 2015 judgment was signed, the trial court signed an identical judgment on June 24, 2015. The subsequent duplicate judgment was superfluous and unnecessary and, therefore, invalid. See St. Pierre v. St. Pierre, 2008-2475 (La.App. 1 Cir. 2/12/10), 35 So.3d 369, 370 n. 1, writ not considered, 2010-0587 (La.3/17/10), 29 So.3d 1243. However, following Noyel’s motion for devolutive appeal of the June 17, 2016 judgment, the trial court issued an order of appeal “from the Judgment rendered in the above-captioned matter on April 30, 2015 and signed on May 15, 2016,” which appears to be a clerical error relative to the dates since the record does not contain a judgment rendered on April 30, 2015 and signed on May 15, 2015. Noyel filed an amended motion for devolu-tive appeal of the second judgment, signed June 24, 2015. The trial court issued an amended order of appeal “from the Judgment rendered on June 2, 2015 and signed on June 24, 2015.”
A party wishing to appeal an adverse judgment must obtain an order of appeal. There can be no appeal absent an order of appeal because the order is jurisdictional; this lack of jurisdiction can be noticed by the court on its own motion at any time. See Snearl v. Mercer, 99-1738 (La.App. 1 Cir. 2/16/01), 780 So.2d 563, 571, writ denied, 2001-1319 (La.6/22/01), 794 So.2d 800, and writ denied, 2001-1320 (La.6/22/01), 794 So.2d 801. Based on the apparent defect in |fithe appeal, this court, ex proprio motu, issued an interim order on May 20, 2016, remanding the case to the trial court for the limited purpose of issuing an amended order of appeal with the correct dates of the original judgment.
• Following this court’s issuance of the interim order, the trial court supplemented the record with an amended order for devolutive appeal, signed on June 10, 2016, from the judgment rendered in this matter on June 2, 2015, and signed on June 17, 2015. As the amended order of appeal contains the correct dates of the original judgment, the jurisdiction of this court now attaches upon the granting of the amended order of appeal. La. C.C.P. art. 2088; see also Baton Rouge Ass’n. of Sch. Employees, Local 100 Serv. Employees *1143 Int’l. Union, AFL-CIO v. E. Baton Rouge Par. Sch. Bd., 98-0526 (La.App. 1 Cir. 4/1/99), 729 So.2d 1154, 1159, writ denied sub nom., 99-1278 (La.7/2/99), 747 So.2d 19.

STANDARD OF REVIEW

A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.[4] La. C.C.P. art. 966(B)(2) and (C)(1).[5] The summary judgment procedure is favored and “is designed to secure the just, speedy, and inexpensive determination of every action.” La. C.C.P. art. 966(A)(2). The purpose of the procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764, 769 (per curiam).
|7The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the . adverse party’s claim. Thereafter, if the adverse party fails to produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2),[6]
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party’s ■ favor. Hines, 876 So.2d at 765. Additionally, courts generally cannot decide credibility issues when entertaining a motion for summary judgment. Hines, 876 So.2d at 769. Furthermore, summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice, and should only be granted on such subjective issues when no genuine issue of material fact exists concerning that issue. Monterrey Center, LLC v. Education Partners, Inc., 2008-0734 (La.App. 1 Cir. 12/23/08), 5 So.3d 225, 232.
A fact is material if it potentially ensures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines, 876 So.2d at 765-66.
Is An appellate court’s review of a summary judgment is de novo review based on the evidence presented to the trial court, using the same criteria used by the court in deciding whether a summary judgment should be granted. Kessler Federal Credit *1144 Union v. Rivero, 2014-0095 (La.App. 1 Cir, 9/19/14), 153 So.3d 1218, 1221. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Shipp v. Landry, 2013-1673 (La.App. 1 Cir. 5/2/14), 147 So.3d 721, 725. In this case, the LSP’s motion for summary judgment before the trial court centers on whether the City and the St. Gabriel Police Department, political subdivisions of the State, are immune from liability for damages that Noyel sustained during his escape from police custody.

ASSIGNMENTS OF ERROR

Noyel assigns the following as error on appeal:
1. The trial court committed error and abused its discretion in granting the defendants’ summary judgment and dismissing the suit.
2. The trial court erred in its interpretation of La. R.S. 29:735 et seq., which constitutes an error of law.

LAW AND DISCUSSION

The defendants moved for summary judgment, asserting that St. Gabriel Police Department Officers Lee and Jones were engaged in homeland security and emergency preparedness activities for the City at the time of the alleged incident, and based on the provisions of La. R.S. 29:721 et seq., as employees of a political subdivision of the State, Officers Lee and Jones are immune from suit. The trial court rendered summary judgment in the defendants’ favor based on its finding that the officers were engaged in emergency preparedness activities at the time of the incident, and therefore, are immune from liability under La. R.S. 29:735.

|¡¿Statutory Immunity

The applicable law is set forth in the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La. R.S. 29:721 et seq. The Legislature enacted this piece of legislature due to the existing possibility of the occurrence of emergencies and disasters resulting from natural or manmade causes. Lyons v. Terrebonne Par. Consol. Govt., 2010-2258 (La.App. 1 Cir. 6/10/11), 68 So.3d 1180, 1183. The Act defines emergency preparedness as “the mitigation of, preparation for, response to, and the recovery from emergencies or disasters.” La. R.S. 29:723(4). Pursuant to the Act, a “disaster” is defined as follows in La. R.S. 29:723(2):
[T]he result of a natural or man-made event which causes loss of life, injury, and property damage, including but not limited to natural disasters such as hurricane, tornado, storm, flood, high winds, and other weather related events, forest and marsh fires, and man-made disasters, including but not limited to nuclear power plant incidents, hazardous materials incidents, oil spills, explosion, civil disturbances, public calamity, acts of terrorism, hostile military action, and other events related thereto.
The Act further provides that “[t]he term ‘emergency preparedness’ shall be synonymous with ‘civil defense’, ‘emergency management’, and other related programs of similar name.” La. R.S. 29:723(4).
The applicable law granting statutory immunity to employees or representatives of the State or its political subdivisions is set forth in La. R.S. 29:735(A)(1), which states, in pertinent part:
Neither the state nor any political subdivision thereof, nor other agencies, nor, except in case of willful misconduct, the agents’ employees or representatives of any of them engaged in any home *1145 land security and emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity. [Emphasis added.]
| mThus, the State, its agencies, and political subdivisions are afforded complete immunity for injury or death resulting from emergency preparedness activities. Koonce v. St. Paul Fire & Marine Ins. Co., 2015-31 (La.App. 3 Cir. 8/5/15), 172 So.3d 1101, 1104, writ denied, 2015-1950 (La.11/30/15), 184 So.3d 36. Pursuant to the same statute, agents, representatives, or employees of the State, its political subdivisions, or agencies are also completely immune except where they have engaged in willful misconduct in the course of preparing for a disaster or emergency. Koonce, 172 So.3d at 1104, “Willful misconduct” pursuant to La. R.S. 29:735 is some voluntary, intentional breach of duty—which may be unlawful, dishonest, and/or improper—that is committed with bad intent or, at best, with wanton disregard for the consequences. See Koonce, 172 So.3d at 1105,1107.
There is no dispute that, at the time of Noyel’s accident, the State of Louisiana was in a declared state of emergency. At the time of the accident at issue, the State of Louisiana was under Gubernatorial Proclamation No. 92 BJ 2012, issued by former Governor Bobby Jindal on August 26, 2012, declaring a state of emergency for the State of Louisiana due to Hurricane Isaac’s impending landfall on Louisiana. The accident at issue occurred in the course of a jail transport while the State was under this order. Thus, the question we must first address is whether Officers Lee and Jones—employees of a political subdivision of the State—were engaged in “homeland security and emergency preparedness activities” at the time of Noyel’s accident. Then, if we find that Officers Lee and Jones were engaged in “homeland security and emergency preparedness activities,” we must determine whether the officers’ action in the course of the jail transport constituted willful misconduct pursuant to La. R.S. 29:735.

|nDefendants’ Motion for Summary Judgment

The defendants filed their motion for summary judgment, a statement of uncontested material facts, and a memorandum. As stated above, La. R.S. 29:735 immunizes the State, its political subdivision, employees, or representatives, from suit for liability for injury or death arising out of homeland security or emergency activates in which they are engaged, unless the injury or death is due to willful misconduct. The defendants argued that at the time of the incident, the transporting officers were engaged in “homeland security or emergency preparedness activities,” and thus, are immune from liability.
In support of their motion for summary judgment, the defendants submitted the following exhibits:
A. State of Emergency—Tropical , Storm Isaac State of Louisiana Executive Department Proclamation No. 92 BJ 2012, issued by.former Governor Bobby Jindal on August 26, 2012;
B. the affidavit of St. Gabriel Police Department Sgt. Sterling Redditt;
C. portions of the transcript of the deposition of St. Gabriel Police Department Officer Dwayne Lee; and
D. a copy of Noyel’s answers to the defendants’ interrogatories and request for production.
Noyel opposed the City’s motion for summary judgment and moved to strike *1146 the defendants’ affirmative defense of immunity based on La. R.S. 29:735. Noyel argued that material issues of fact existed regarding whether the transporting officers were engaged in “homeland security and emergency preparedness activities” at the time of his injury. In support of his opposition, Noyel submitted:
A. the transcript of the deposition of St. Gabriel Police Department Officer Dwayne Lee; and the
B. the transcript of the deposition of St. Gabriel Police Department Officer Robert Jones.
1iaThe defendants filed a reply to Noyel’s opposition to their motion for summary judgment.

Discussion

In the present matter, Noyel was arrested for looting. “Looting” is defined in La. R.S. 14:62.5(A) as the:
[Ijntentional entry by a person without authorization into any ... structure belonging to another and used in whole or in part as place of business, or any .., building, plant, establishment, or other structure, movable or immovable, in which normal security of property is not present by virtue of a hurricane, flood, fire, act of God, or force majeure of any kind ... and the obtaining or exerting control over or damaging or removing property of the owner.
Notably, the penalties for looting are heightened during the declaration of a state of emergency. La. R.S. 14:62.5(0). In order to convict one accused of looting during a declared emergency, the State must prove that the alleged perpetrator: (1) intentionally entered a building, plant, establishment, or other structure, (2) that lacked normal security because of a hurricane, flood, act of God, or force majeure of any kind, (3) during a declared state of emergency that the defendant knew or should have known existed, and (4) that the defendant obtained, exerted control over, damaged, or removed property of the owner. See State v. Harris, 2007-124 (La. App. 5 Cir. 9/25/07), 968 So.2d 187, 193. Additionally, the State must prove the identity of the defendant as the perpetrator. State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 583, 593.
Sergeant Redditt arrested Noyel for looting the City’s wastewater treatment facility during Hurricane Isaac and obtaining a 55-gallon drum of diesel fuel and removing it from the wastewater treatment facility. The wastewater treatment facility used diesel fuel to run the facility’s generator in the event of a power outage. Officers Lee and Jones then attempted to transport Noyel to jail following his arrest. By its nature, looting is a crime which can only occur during a time of | isemergency “when normal security of property is not present.” See La. R.S. 14:62.5(A). As previously discussed, the State of Louisiana was in a declared state of emergency at the time of Noyel’s accident. Pursuant to the Act, “emergency preparedness” is synonymous with, among other terms, “civil defense.” La. R.S. 29:723(4). The St. Gabriel Police Department’s employees, who arrested and transported Noyel to jail, were clearly engaged in activities which constitute “civil defense,” and thus, according to the Act, are also known as “emergency preparedness activities.” We conclude that the officers were engaged in emergency preparedness activities.
We likewise have reviewed the record and conclude that Noyel has presented no evidence that the officers involved in his jail transport acted with willful misconduct. We find nothing about the conduct of Lee or Jones to be even slightly suggestive of any bad intent or reckless disregard for the consequences of them actions. Lee and Jones acted with good faith, although perhaps imperfect. We also note that Noyel pled guilty to simple escape of the *1147 police vehicle. Therefore, because the officers were engaged in “emergency preparedness activities” and neither officer acted with willful misconduct pursuant to La. R.S. 29:735(A)(1), they are not liable for the injuries sustained by Noyel. Based on the record before us, we therefore hold that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. Thus, we affirm the trial court’s grant of summary judgment.

DECREE

The June 17, 2015 judgment of the trial court is hereby affirmed. All costs of this appeal are assessed to the plaintiff/appellant, Gregory Noyel.
AFFIRMED.

. The proclamation stated the state of emergency would extend from Sunday, August 26, 2012, through Tuesday, September 25, 2012, unless terminated sooner.

. In his responses to the defendants’ interrogatories and request for production of documents, Noyel stated that following his guilty plea and conviction for simple escape, he was "put on probation.” There is no other indication from the record as to his sentence for that crime.

. In his petition, Noyel stated that he was "intoxicated at the time” of his arrest.

.Louisiana Code of Civil Procedure article 966 was amended by 2015 La. Acts 422, § 1; however, the new version of Article 966 does not apply to this case as the amendment did not become effective until January 1, 2016. Here, the pendency of the instant appeal on the effective date of 2015 La. Acts 422 results in the application of the prior version of Article 966 to the instant matter.

. Now, see La. C.C.P. art. 966(A)(3).

. Now, see La. C.C.P. art. 966(D)(1).